KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
William M. Goodman (SBN 61305)
E-mail: wgoodman@kasowitz.com
Christopher J. McNamara (SBN 209205)
E-mail: cmcnamara@kasowitz.com
101 California Street, Suite 2050
San Francisco, CA 94111
Telephone:  (415) 421-6140
Facsimile:  (415) 398-5030

Attorneys for Defendant
and Counterclaim Plaintiff:
Sonitrol Corporation

## IN THE UNITED STATES DISTRICT COURT

## FOR THE NORTHERN DISTRICT OF CALIFORNIA

## (SAN FRANCISCO DIVISION)

| | |
|---|---|
| S.N.D.A., a California non-profit mutual benefit corporation, | CASE NO.:  C 08 – 02168 JL |
| Plaintiff, | |
| v. | ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIM OF DEFENDANT SONITROL CORP. |
| SONITROL CORPORATION, a Delaware Corporation, and DOES 1-50, | |
| Defendants. | |

## ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIM

Defendant and Counterclaim Plaintiff Sonitrol Corporation, by and through its

undersigned counsel, hereby answers the Complaint and asserts the Affirmative Defenses and

Counterclaim set forth below.

1

1.      Admitted in part, denied in part.  Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations that SNDA has no fixed place of business.  Upon information and belief, the remaining allegations are admitted.

2.      Admitted.

3.      Paragraph 3 consists of conclusions of law requiring no answer.  To the extent that Paragraph 3 contains any factual allegations, Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of these allegations.

4.      Paragraph 4 consists of conclusions of law requiring no answer.  To the extent that Paragraph 4 contains any factual allegations, Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of these allegations.

5.      Admitted.

6.      Admitted in part, denied in part.  It is denied that approximately 40% of the Sonitrol businesses in the United States are Sonitrol owned locations.  The remaining allegations are admitted, except to the extent that the allegations from other paragraphs that Plaintiff incorporates into this paragraph are otherwise denied.

7.      Paragraph 7 consists of conclusions of law requiring no answer.  To the extent that Paragraph 7 contains any factual allegations, Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of these allegations.

8.      Paragraph 8 consists of conclusions of law requiring no answer.  To the extent that Paragraph 8 contains any factual allegations, they are denied.

9.      Paragraph 9 consists of conclusions of law requiring no answer.  To the extent that Paragraph 9 contains any factual allegations, Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of these allegations.

10.     Paragraph 10 consists of conclusions of law requiring no answer.  To the extent that Paragraph 10 contains any factual allegations, these allegations relate to written agreements that speak for themselves, and to the extent that the allegations are contrary to or inconsistent with the written agreements, the allegations are denied.  Remaining allegations, if any, are denied.

11.     Paragraph 11 consists of conclusions of law requiring no answer.  To the extent that Paragraph 11 contains any factual allegations, these allegations relate to written agreements that speak for themselves, and to the extent that the allegations are contrary to or inconsistent with the written agreements, the allegations are denied.  It is also denied that the contractual provisions of the franchise agreements that relate to SNDA's claims are substantially similar or the same and remaining allegations, if any, are denied.

12.     Paragraph 12 consists of conclusions of law requiring no answer.  To the extent that Paragraph 12 contains any factual allegations, they are denied.

13.     Paragraph 13 consists of conclusions of law requiring no answer.  To the extent that Paragraph 13 contains any factual allegations, they are denied.

FIRST CAUSE OF ACTION

14.     Paragraphs 1 through 13 are incorporated by reference as if fully set forth herein.

15.     Paragraph 15 consists of conclusions of law requiring no answer.  To the extent that Paragraph 15 contains any factual allegations, Sonitrol states that the franchise agreements referenced therein are documents that speak for themselves, and specifically denies any characterization of their contents by Plaintiff that is inconsistent with or contrary to their contents.  Remaining factual allegations, if any, are denied.

3

16.    Paragraph 16 consists of conclusions of law requiring no answer.  To the extent that Paragraph 16 contains any factual allegations, Sonitrol states that the franchise agreements referenced therein are documents that speak for themselves, and specifically denies any characterization of their contents by Plaintiff that is inconsistent with or contrary to their contents.  Remaining factual allegations, if any, are denied.

17.    Admitted in part, denied in part.  Sonitrol admits that its franchisees purchase and sell products manufactured and sold by companies other than Sonitrol and that, under certain circumstances, Sonitrol has not objected to and has accepted royalty payments from franchisees in connection with such other products.  Further answering, Sonitrol has been informed that certain franchisees, or the owners or employees of franchisees, may be affiliated with other non-Sonitrol business entities that sell security products other than Sonitrol's products.  As to the remaining allegations, Sonitrol lacks sufficient information to form a belief as to the truth of these remaining allegations.

18.    Admitted in part, denied in part.  Sonitrol admits that it purchases and sells products manufactured and sold by companies other than Sonitrol and that it has conventional accounts.  The remaining allegations of Paragraph 18 are denied.

19.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 19, except that Sonitrol admits that its franchisees have purchased, sold and serviced products manufactured and sold by companies other than Sonitrol.

20.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations in Paragraph 20.

21.    Paragraph 21 consists of conclusions of law requiring no answer.  To the extent that Paragraph 21 contains any factual allegations, they are denied.  By way of further answer,

4

Sonitrol states that the franchise agreements referenced in Paragraph 21 are documents that speak for themselves, and specifically denies any contrary or inconsistent characterizations of their contents by Plaintiff.

22.    Paragraph 22 consists of conclusions of law requiring no answer.  To the extent that Paragraph 22 contains any factual allegations, they are denied.

SECOND CAUSE OF ACTION

23.    Paragraphs 1 through 22 are incorporated by reference as if fully set forth herein.

24.    Admitted in part, denied in part.  Sonitrol admits that both it and its franchisees purchase and sell products manufactured and sold by companies other than Sonitrol.  The remaining allegations of Paragraph 24 are denied.  In addition, certain allegations in this paragraph are conclusions of law requiring no answer.

25.    Admitted in part, denied in part.  Sonitrol only admits that it has advised some of its franchisees that using the Sonitrol trademark in connection with products or services manufactured or marketed by companies other than Sonitrol could or does, under certain circumstances, constitute a violation of the franchise agreements.  The remaining allegations are denied.  In addition, certain allegations in this paragraph are conclusions of law requiring no answer.

26.    Paragraph 26 consists of conclusions of law requiring no answer.  To the extent that Paragraph 26 contains any factual allegations, these factual allegations characterize written agreements that speak for themselves, and Sonitrol denies any inconsistent or contrary characterizations of the written agreements by Plaintiff.  Remaining factual allegations, if any, are denied.

27.    Paragraph 27 consists of conclusions of law requiring no answer. To the extent that Paragraph 27 contains any factual allegations, these factual allegations characterize written agreements that speak for themselves, and Sonitrol denies any inconsistent or contrary characterizations of the written agreements by Plaintiff. Remaining factual allegations, if any, are denied.

28-29.  Paragraphs 28-29 consist of conclusions of law requiring no answer. To the extent that Paragraphs 28-29 contain any factual allegations, such allegations characterize written agreements that speak for themselves, and Sonitrol denies any inconsistent or contrary characterizations of the written agreements by Plaintiff. Remaining factual allegations, if any, are denied.

## THIRD CAUSE OF ACTION

30.    Paragraphs 1 through 29 are incorporated by reference as if fully set forth herein.

31-32.  Paragraphs 31-32 consist of conclusions of law requiring no answer. To the extent that Paragraphs 31-32 contain any factual allegations, such allegations characterize written agreements that speak for themselves, and Sonitrol denies any inconsistent or contrary characterizations of their contents by Plaintiff. Remaining factual allegations, if any, are denied.

33.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 33.

34.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the first allegation contained in Paragraph 34. The remaining allegations in Paragraph 34 consist of conclusions of law requiring no answer. To the extent that Paragraph 34 contains any factual allegations, Sonitrol states that the National Accounts contracts referenced therein are documents that speak for themselves, and specifically denies any inconsistent or contrary

6

characterizations of their contents by Plaintiff.  By way of further answer, Sonitrol states as follows:

a.    Sonitrol admits that, pursuant to entering a National Accounts contract, Sonitrol negotiates the price for local service, installation and monitoring with the National Accounts customer, and offers its independent dealers the option of servicing the locations of the National Accounts customer in their territory, at the negotiated price.

b.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the first allegation contained in subparagraph b.  Sonitrol denies the remaining allegations in this subparagraph, except that it admits that Sonitrol generally requires its franchisees to pay Sonitrol a sales commission in the amount of 13% of the total contract value of a given National Account customer, in the event that the dealer accepts that customer.

c.    Sonitrol admits that its franchisees may accept or decline a National Account customer; that if the dealers accept the National Account customer, that, generally, they also accept the National Account prices for installation, service and monitoring; and that Sonitrol services the National Account customer if the dealer declines.  Sonitrol lacks knowledge or information sufficient to form a belief as to relative profit margin of the "Dealers" referenced collectively in this subparagraph under the National Account program.  Sonitrol denies the remaining allegations of this subparagraph.

d.    Sonitrol admits that it invoices and collects payment for certain National Accounts customers, that the franchisees who service these customers provide information to Sonitrol concerning the services provided, and that, generally, Sonitrol agrees to pay its dealers upon receipt of this information.  Sonitrol denies the remaining allegations in this subparagraph.

e.    Sonitrol denies the allegations in this subparagraph.

7

f.       Sonitrol denies the allegations in this subparagraph.

35.      Admitted that Sonitrol markets National Accounts in franchisee territories, pursuant to and in accordance with its rights as franchisor.  All remaining allegations, if any, are denied.

36.      Paragraph 36 consists of conclusions of law requiring no answer.  To the extent that Paragraph 36 contains any factual allegations, they are denied.  By way of further answer, Sonitrol states that the franchise agreements referenced in Paragraph 36 are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

37.      Paragraph 37 consists of conclusions of law requiring no answer.  To the extent that Paragraph 37 contains any factual allegations, they are denied.  By way of further answer, Sonitrol states that the contracts mentioned in this Paragraph are documents that speak for themselves, and denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

38.      Paragraph 38 consists of conclusions of law requiring no answer.  To the extent that Paragraph 38 contains any factual allegations, Sonitrol states that the franchise agreements mentioned in this Paragraph are documents that speak for themselves, and denies any contrary or inconsistent characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

FOURTH CAUSE OF ACTION

39.      Paragraphs 1 through 38 are incorporated by reference as if fully set forth herein.

40.      Admitted.

41.    Sonitrol lacks knowledge or information sufficient to form a belief as to the allegation that the National Account price is almost always lower than the price a Dealer would otherwise charge.  Sonitrol denies the remaining allegations in this Paragraph.

42.    The allegations of this paragraph contain conclusions of law requiring no answer. The remaining factual allegations are denied.

43.    Paragraph 43 consists of conclusions of law requiring no answer.  To the extent that Paragraph 43 contains any factual allegations, they are denied.  By way of further answer, Sonitrol states that the franchise agreements referenced in Paragraph 43 are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

44.    Paragraph 44 consists of conclusions of law requiring no answer.  By way of further answer, Sonitrol states that the franchise agreements referenced in Paragraph 44 are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

45.    Paragraph 45 consists of conclusions of law requiring no answer.  To the extent that Paragraph 45 contains any factual allegations, they are denied.

FIFTH CAUSE OF ACTION

46.    Paragraphs 1 through 45 are incorporated by reference as if fully set forth herein.

47.    Admitted, except Sonitrol lacks sufficient information to form a belief as to the truth of the allegations regarding the geographic locations of each and every TGIF restaurant.

48.    The National Account proposal referenced in Paragraph 48 is contained in documents that speaks for themselves, and Sonitrol specifically denies any inconsistent or

9

contrary characterizations of their contents by Plaintiff. Remaining factual allegations, if any, are denied.

49.     Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 49. With respect to the remaining allegations in Paragraph 49, Sonitrol states that the agreements referenced therein are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff. Further answering, it is denied that Dealers will be required to terminate any contracts with Cardinal Health Care. Remaining factual allegations, if any, are denied.

50.     Paragraphs 50 contains conclusions of law requiring no answer. To the extent that Paragraphs 50 contains any factual allegations, Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations regarding the Dealers' financial losses, or loss of ability to market their products and services. Further answering, Sonitrol denies the remaining allegations.

51.     Paragraph 51 contains conclusions of law requiring no answer. All factual allegations are denied.

52.     Sonitrol admits that it benefits from the National Accounts program, that it generally receives from participating franchisees a 13% sales commission and payment for equipment Sonitrol sells to the participating franchisees. The remaining allegations and implications are denied.

53.     Paragraph 53 consists of conclusions of law requiring no answer. To the extent that Paragraph 53 contains any factual allegations, they are denied.

54.    Paragraph 54 consists of conclusions of law requiring no answer.  To the extent that Paragraph 54 contains any factual allegations, the allegations are denied.

SIXTH CAUSE OF ACTION

55.    Paragraphs 1 through 54 are incorporated by reference as if fully set forth herein.

56.    Paragraph 56 consists of conclusions of law requiring no answer.  To the extent that Paragraph 56 contains any factual allegations, Sonitrol states that the franchise agreements referenced therein are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

57.    Paragraph 57 consists of conclusions of law requiring no answer.  To the extent that Paragraph 57 contains any factual allegations, Sonitrol states that the franchise agreements referenced therein are documents that speak for themselves, and specifically denies any inconsistent or contrary characterization of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

58-60.  Paragraphs 58-60 consist of conclusions of law requiring no answer.  To the extent that Paragraphs 58-60 contain any factual allegations, Sonitrol states that the franchise agreements referenced therein are documents that speak for themselves, and specifically denies any contrary or inconsistent characterization of their contents by Plaintiff.  Remaining allegations, if any, are denied.

61.    Paragraph 61 consists of conclusions of law requiring no answer.  To the extent that Paragraph 61 contains any factual allegations, Sonitrol states that the contracts referenced therein are documents that speak for themselves, and specifically denies any characterization of their contents by Plaintiff.  Remaining allegations, if any, are denied.

11

62.    Paragraph 62 consists of conclusions of law requiring no answer.  To the extent that Paragraph 62 contains any factual allegations, Sonitrol states that the franchise agreements referenced therein are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining allegations, if any, are denied.

SEVENTH CAUSE OF ACTION

63.    Paragraphs 1 through 62 are incorporated by reference as if fully set forth herein.

64.    Admitted.

65.    Admitted.  Further responding, Sonitrol states that the agreements referenced therein are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.

66.    Sonitrol admits that "mysonitrol.com" was the only website operated by Sonitrol between 2001 and 2007, and that in 2007 Sonitrol created another website, "mysonitrol.net." The remaining allegations of Paragraph 66 are denied.

67.    Certain allegations of this paragraph are conclusions of law requiring no answer. As to the factual allegations, admitted in part and denied in part, as follows:  Sonitrol admits that "MySonitrol.net" is a superior web application compared to "MySonitrol.com."  The allegations regarding the transfer process from one website to the other relate to written documents that speak for themselves and Sonitrol denies any inconsistent or contrary characterizations of these written documents by the Plaintiff.  The remaining factual allegations are denied.

68.    Paragraph 68 consists of conclusions of law requiring no answer.  To the extent that Paragraph 68 contains any factual allegations, they are denied.

EIGHTH CAUSE OF ACTION

69.    Paragraphs 1 through 68 are incorporated by reference as if fully set forth herein.

70.    Admitted.

71.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in the first sentence of Paragraph 71.  Sonitrol admits the remaining allegations in this Paragraph.

72.    Sonitrol states that the franchisee web site agreement and privacy policy referenced in Paragraph 72 are documents that speak for themselves, and specifically denies any inconsistent or contrary characterizations of their contents by Plaintiff.  Remaining factual allegations, if any, are denied.

73.    Admitted in part, denied in part.  The allegations of this paragraph are admitted, except that Sonitrol specifically denies that it has disclosed, intends to disclose, or will permit the disclosure of, any confidential information with respect to its franchisees or the customers' of its franchisees.

74.    Sonitrol admits that at least one of the "potential buyers" referenced in Paragraph 74 is in the business of marketing security products and services.  The remaining allegations of Paragraph 74 are denied.

75.    Sonitrol lacks knowledge or information sufficient to form a belief as to the truth of the allegations contained in Paragraph 75.  By way of further answer, Sonitrol and its independent dealers share the same motivation to maintain as confidential all customer information and none will be disclosed or permitted to be disclosed to any potential purchaser of Sonitrol.

13

76.     Paragraph 76 consists of conclusions of law requiring no answer.  To the extent that Paragraph 76 contains any factual allegations, they are denied.

## FIRST DEFENSE

Plaintiff's claims fail to state facts sufficient to constitute a cause of action.

## SECOND DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the applicable statute of limitations.

## THIRD DEFENSE

Plaintiff's claims may be barred, in whole or in part, as Sonitrol did not breach any legal or contractual duty to Plaintiff.

## FOURTH DEFENSE

.     Plaintiff's claims may be barred, in whole or in part, by the principles of accord and satisfaction, and payment.

## FIFTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrine of release.

## SIXTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the doctrines of laches, unclean hands, equitable estoppel and/or waiver.

## SEVENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, because it lacks standing to raise its claims.

## EIGHTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the arbitration provisions contained in the several franchise agreements at issue.

## NINTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by the forum selection and/or choice of law provisions contained in the several franchise agreements at issue.

## TENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, as there is no legal or factual basis for Plaintiff's claims.

## ELEVENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, as at all relevant times, Sonitrol acted reasonably, lawfully, appropriately and in good faith.

## TWELFTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, for its failure to join an indispensable party or parties.

## THIRTEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by promissory estoppel.

## FOURTEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, for lack of consideration.

## FIFTEENTH DEFENSE

Plaintiff's claims may be barred, in whole or in part, by breach of contract committed by Plaintiff's one or more of its purported members.

**SIXTEENTH DEFENSE**

Sonitrol reserves the right to assert additional affirmative defenses that may appear and prove applicable during the course of this litigation.

WHEREFORE, Defendant, Sonitrol Corporation, requests that the Complaint and all relief demanded therein be dismissed with prejudice in its entirety; judgment be entered in favor of Sonitrol Corporation; and Sonitrol Corporation be awarded such other and further relief, including but not limited to attorney's fees and costs to the extent permitted by applicable law, as this Court deems appropriate.

**COUNTERCLAIM**

Defendant and Counterclaim-Plaintiff Sonitrol Corporation ("Sonitrol"), for its Counterclaim against S.N.D.A., a California non-profit mutual benefit corporation ("SNDA"), states as follows:

***Jurisdiction and Venue***

1.      Sonitrol is incorporated in the State of Delaware and has its principal place of business in the Commonwealth of Pennsylvania.

2.      SNDA is incorporated in the State of California and has its principal place of business in the State of Ohio.

3.      Therefore, Sonitrol and SNDA are citizens of different states and the diversity requirement for jurisdiction in the United States District Court under 28 U.S.C. § 1332(a) is satisfied.

4.      By its counterclaim against SNDA, Sonitrol seeks a declaratory judgment pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that SNDA lacks standing

to seek declaratory relief in order to adjudicate the rights and obligations of Sonitrol with respect to any Sonitrol franchisee or group of Sonitrol franchisees.

5.      The declarations sought by SNDA in its Complaint, if indeed declared by a court as SNDA requests, would result in the purported members of SNDA, i.e. the Sonitrol franchisees, gaining aggregate revenue in excess of $75,000 (to the detriment of Sonitrol by the same amount), exclusive of interest and cost.

6.      In a similar fashion, the declarations sought by Sonitrol in its Counterclaim, if indeed declared by a court as Sonitrol requests, would prohibit the SNDA from gaining on behalf of its members an amount in excess of $75,000 (to the detriment of Sonitrol by the same amount), exclusive of interest and costs.

7.      Therefore, the amount in controversy requirement for original jurisdiction under 28 U.S.C. § 1332(a) is satisfied.

8.      SNDA has contacts with and within the State of California sufficient for this Court to exercise personal jurisdiction over SNDA.  Accordingly, SNDA is a resident of the State of California under 28 U.S.C. § 1391(a)(1) and venue is proper in the United States District Court for the Northern District of California.

9.      Venue is also proper in the United States District Court for the Northern District of California under 28 U.S.C. § 1391(a)(2) because the declaratory relief Sonitrol seeks by its Counterclaim is in response to the lawsuit filed by SNDA in the Superior Court of the State of California, San Francisco County; and therefore, a substantial part of the events giving rise to the counterclaim has occurred within the Northern District of California.

### *The Counterclaim Facts*

10.    Sonitrol is a security company that offers the sale and installation of security solutions, including specifically verified, impact-activated audio intrusion detection, video surveillance, access control and fire monitoring.

11.    Sonitrol provides these security solutions either through its own Sonitrol locations, or through independent dealers with whom Sonitrol has entered into various franchise agreements.

12.    In total, Sonitrol's direct operation and the Sonitrol franchisees serve customers across approximately 180 cities located within the United States and Canada.

13.    Sonitrol currently has in effect 104 franchise contracts with 54 separate franchisee individuals or entities,

14.    Sonitrol authorizes each franchisee to operate within an specific geographical territory or territories, and these franchisees' territories, together with Sonitrol's direct operations, spread across North America.

15.    The rights and obligations of Sonitrol in connection with each of its franchisees are governed, as to each franchisee, by a specific and unique franchise contract.

16.    The terms and conditions of the franchise contracts, as one may be compared to another, vary.  In some instances, the variances are material.

17.    Also, the rights and obligations of Sonitrol may be governed by the law of the State identified in the franchise contract.  However, not all franchise contracts call for the application of a specific State's laws, or the same State's laws when choice of law provisions are included.

18

18.    With respect to a number of franchisees, the specific laws of the States in which the franchisees are located would be applied to govern the relationships between Sonitrol and its franchisees, and not all such relevant laws are uniform, or uniformly applied.

19.    For example, some applicable States recognize the duty of good faith and fair dealing as existing between contracting parties, while other States do not automatically recognize or impose such a duty.

20.    Sonitrol's relationship with each of its franchisees may also be governed by the course of dealings that exist between Sonitrol, on one hand, and each of its 54 franchisee individuals or entities, on the other; and the course of dealings between Sonitrol and its franchisees are not, in all cases, uniform.  In some instances, the course of dealings from one franchisee compared to another materially differ.

21.    SNDA purports to represent the Sonitrol franchisees, whom SNDA describes as its membership.

22.    Against the above-described backdrop of distinct franchisee contracts, relationships, rights and obligations, as existing between Sonitrol and each of its franchisees, along with the application of distinct and non-uniform laws, SNDA by its Complaint asks the Court to enter broad-sweeping and uniform declaratory and equitable relief in favor of all Sonitrol franchisees, as follows:

    a.    Declare that Sonitrol may not prohibit franchisees from selling Complementary Products;

    b.    Declare that Sonitrol may not prohibit franchisees from selling Competing Products;

    c.    Declare that Sonitrol may not disapprove products which are of the same or superior quality as products authorized for sale by SNDA's members, or which Sonitrol sells in its Company Owned Locations;

d.  Declare that franchisees' sales of Complementary Products and/or Competing Products are not part of their franchised businesses;

e.  Declare that Sonitrol may not charge franchisees royalties on revenues from sales of Complementary Products and/or Competing Products;

f.  Declare that Sonitrol may not declare a franchisee in default if an affiliate of that franchisee sells Complementary Products and/or Competing Products of the same types and functions as those being offered by other Sonitrol franchisees or Sonitrol's Company Owned Locations;

g.  Declare that Sonitrol has not reserved to itself the exclusive right to organize and direct a National Accounts program under the franchise contracts, and franchisees can join together to provide service to multi-location accounts, with each participating franchisee servicing the accounts' locations within their APR, without breaching any obligations under the franchise contracts;

h.  Declare that Sonitrol may not sell or promote National Accounts within the territory of any franchisee to whom it has granted exclusive territorial rights, without that franchisee's permission.

i.  Declare that franchisees may decline to participate in marketing the Sonitrol National and Key Accounts programs to potential subscribers within their Areas of Primary Responsibilities without violating any obligations of the franchise contracts;

j.  Declare that, in the event that Sonitrol materially breaches a franchise contract, it is prevented by its breach from enforcing the post-term non-compete covenant against the non-breaching former franchisee;

k.  Enjoin Sonitrol from requiring any franchisee with a current contract or relationship within their Area of Primary Responsibility from abandoning such contracts, relationships or sales efforts (specifically including but not limited to the Braid Restaurant and Cardinal Health Care accounts);

l.  Enjoin Sonitrol from offering commercially unreasonable terms as part of any National Account Program, including requiring franchisee financing of the purchase and installation of the equipment, or terms that would substantially deprive franchisees of significant profits or marketing opportunities within their territories;

m.  Enjoin Sonitrol from denying any franchisee that is licensed to use MySonitrol.com access to MySonitrol.net; and

20

n.  Enjoin Sonitrol from disclosing any of the franchisees' confidential information to any third party unless Sonitrol has first informed the relevant franchisee as to the specific information to be revealed and received the franchisee's written approval.

23.     In disregard of the unique terms of the various franchise contracts, the variety of States' laws implicated by the relationships between Sonitrol and its franchisees, the unique course of dealing between Sonitrol and each of its franchisees, and other unique characteristics that would impact the adjudication of the rights and obligations that exist between Sonitrol and each of its franchisees; SNDA demands a "one-size-fits-all" adjudication from the Court which, if granted, would afford identical relief to all of the Sonitrol franchisees.

24.     Such a demand is fraught with unique choice-of-law determinations relevant to each franchisee/Sonitrol relationship, unique factual inquiries relevant to each franchisee/Sonitrol relationship, and unique rights and obligations as existing between Sonitrol, on one hand, and each of its franchisees, on the other 54 hands.

25.     In addition, SNDA cannot demonstrate that the adjudication of each franchisees' rights with respect to its independent contracts and relationships with Sonitrol are appropriately handled in the summary fashion it has proposed.

26.     Nor has SNDA demonstrated that the members for whom it has purportedly sued Sonitrol have authorized SNDA to demand the relief it seeks.

## COUNT ONE

### *Declaratory Relief*

27.     Sonitrol incorporates by reference the above Counterclaim paragraphs as if fully set forth herein.

21

28.     Sonitrol disputes the contentions of SNDA that it possesses standing to properly present claims for declaratory and injunctive relief against Sonitrol on behalf of its purported membership, the Sonitrol franchisees.

29.     In disregard of the unique provisions of the various franchisee contracts at issue, the distinct laws of the several states implicated these contracts, the unique course of dealings between Sonitrol and each of its franchisees, and other factors affecting the rights and obligations that exist between Sonitrol and each of its 54 franchisees, SNDA seeks uniform declaratory and injunctive relief to be applied to all franchisees from this Court, as herein described, that would adjudicate the distinct rights and obligations as existing between Sonitrol and each of its franchisees in a "one size fits all" summary fashion.

30.     SNDA lacks standing to seek generic and summary relief on behalf of all of its individual members.

WHEREFORE, Sonitrol respectfully requests that this Honorable Court grant the following relief:

a.      That it enter a Declaratory Judgment, pursuant to the Federal Declaratory Judgment Act, 28 U.S.C. § 2201, that SNDA lacks standing to seek declaratory relief in order to adjudicate the rights and obligations of Sonitrol with respect to any Sonitrol franchisee or group of Sonitrol franchisees;

b.      That Sonitrol recover the costs it has incurred in prosecuting the Counterclaim and defending the Complaint, including but not limited to attorneys fees, to the fullest extent allowed by law; and

Answer, Affirmative Defenses and Counterclaim, Case No.: C08 – 02168 JL

       c.      That Sonitrol be awarded such other and further relief that the Court

deems proper.


Dated:  May 6, 2008

                                 _/S/ Christopher J. McNamara_____
                                  KASOWITZ, BENSON, TORRES & FRIEDMAN, LLP
                                  William M. Goodman (SBN 61305)
                                  E-mail: wgoodman@kasowitz.com
                                  Christopher J. McNamara (SBN 209205)
                                  E-mail: cmcnamara@kasowitz.com
                                  101 California Street, Suite 2050
                                  San Francisco, CA 94111
                                  Telephone:  (415) 421-6140
                                  Facsimile:  (415) 398-5030

                                  Attorneys for Defendant:
                                  Sonitrol Corporation

# PROOF OF SERVICE

I, Beth A. Johnson declare that I am employed in the City of San Francisco, County of San Francisco, at the business address of 101 California Street, Suite 2050, San Francisco, California 94111. I am over the age of eighteen years and am not a party to this matter.

On May 6, 2008, I caused to be served the attached:

## ANSWER, AFFIRMATIVE DEFENSE, AND COUNTERCLAIM OF DEFENDANT SONITROL CORP.

on the following:

Bryan W. Dillon
Bruce Jonathan Napell
Singler Napell & Dillon LLP
127 South Main Street
Sebastopol, CA 95472

☒ **By Mail**. (C.C.P. §1013a, 1015.5) I placed the above-documents in sealed envelope(s), with postage thereon fully prepaid, for collection and mailing at San Francisco, California, following ordinary business practices. I am readily familiar with the practices of Kasowitz, Benson, Torres and Friedman for processing of correspondence, said practice being that in the ordinary course of business, correspondence is deposited in the United States Postal Service the same day as it is placed for processing.

☐ **By Personal Service**. I caused the above documents to be delivered by hand to the addressee(s) noted above.

☐ **By Facsimile**. I caused the above documents to be served via facsimile electronic equipment transmission to the number indicated after the address(es) noted above.

Executed this 6th day of May, 2008

BETH A. JOHNSON